**In re HARTFORD RUN APARTMENTS OF BUFORD, LTD., Debtor.**

**Bankruptcy No. 2–89–02495.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 21, 1989.

A.C. Strip, Myron N. Terlecky, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, Ohio, for debtor.

David G. Heiman, Richard M. Cieri, Jones, Day, Reavis & Pogue, Columbus, Ohio, for Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc.

David M. Whittaker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, and James H.M. Sprayregen, Rudnick & Wolfe, Chicago, Ill., for First Federal Sav. & Loan Ass'n of Russell County.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

### ORDER SUSTAINING MOTION TO DISMISS CASE

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on a motion filed on behalf of First Federal Savings & Loan Association of Russell County ("First Federal"), seeking an order dismissing the Chapter 11 case of Hartford Run Apartments of Buford, Ltd. ("Hartford"). The motion was opposed by Hartford and was heard by the Court on June 15, 1989.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine.

The following facts were established by testimony or documentary evidence.

1. On September 19, 1988 Hartford, a Georgia limited partnership, transferred its interest in a certain apartment project in Gwinnett County, Georgia (the "Apartments") to Cardinal Partner Corp., an Ohio corporation ("Partner"). That transfer was accomplished by a quit-claim deed to Partner which was duly recorded in the office of the Clerk of the Superior Court of Gwinnett County, Georgia, on September 23, 1988.

2. On October 4, 1988 Cardinal Industries, Inc. ("CII"), in its capacity as the general partner of Hartford, executed a Certificate of Cancellation of Limited Partnership for Hartford Run Apartments of Buford, Ltd. That certificate was filed in the office of the· Clerk of the Superior Court of Gwinnett County, Georgia, on October 11, 1988 and was effective upon filing. The stated reason for the termination was that Hartford's business had been assumed by Cardinal Investment Properties, Inc. ("Investment").

3. On April 13, 1989 a new Certificate of Limited Partnership Filing was issued for Hartford by the Secretary of the State of Georgia. The new term of the Partnership's existence was from January 1, 1989 to December 31, 2029. The limited partnership filing was initiated on March 15, 1989 by a certificate executed by CII and R/E Management Services, Inc., Hartford's other general partner.

4. On May 1, 1989 a Corrective Quit Claim Deed was executed by Partner which retransferred the Apartments to Hartford.

5. Hartford filed a petition under Chapter 11 of the Bankruptcy Code on May 2, 1989 and First Federal's motion to dismiss was filed on May 11, 1989.

6. The Corrective Quit Claim Deed was filed with the Clerk of the Superior Court of Gwinnett County, Georgia, on May 25, 1989.

7. The Statement of Financial Affairs and Schedules of Assets and Liabilities for Hartford were not filed until June 5, 1989. Asset Schedule B–1 shows ownership of the Apartments by Hartford. Statement question 14b., which asks if the debtor has made any "transfer ... or any other disposition which was not in the ordinary course of business during the year immediately preceding the filing of the original petition herein", was answered by the debtor: None.

8. No amendments to the Statement or Schedules were made prior to the hearing on this motion.

## ISSUES OF LAW

The issue before the Court is whether this case should be dismissed either because (1) the debtor was not an entity eligible for bankruptcy relief on May 2, 1989; (2) the debtor had no assets with which to reorganize; or (3) the petition was filed in bad faith.

## CONCLUSIONS OF LAW

The Court finds that documentary evidence establishes that Hartford had been certified as a Limited Partnership in the state of Georgia prior to its bankruptcy filing. Therefore, First Federal's assertion that the debtor was ineligible for relief is overruled.

The Court further finds that, as between Hartford and Partner, Hartford owned the Apartments as of the date of its bankruptcy filing. Because testimony further indicated that the operation of the Apartments never changed as a result of the transfers, it is not necessary to consider the effect of the holding in *In the Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985). This debtor had a business which it wishes to reorganize.

The issue of more concern to this Court is the allegation of bad faith in this filing by the debtor's lack of disclosure in its schedules of any of the highly unusual transfers or changes in its business form. The reasons for the property transfers and the termination and reestablishment of the limited partnership were explained as part of an attempt by CII to establish a Real Estate Investment Trust by merger into the REIT of Partner, which would own the desired properties at the time the trust was funded. The REIT, which was to have

**132**

been listed on the New York Stock Exchange, was inadequately funded and never went to closing. Such failure required reversal of the property transfer and partnership termination. That explanation is accepted and understood by the Court.

What is not accepted or understood, however, is Hartford's failure to disclose any of these transactions in its statements or schedules. And even though the allegations were made in First Federal's motion seeking to dismiss this case as early as May 11, 1989, the disclosures were not present in the Statement of Financial Affairs filed June 5, 1989. Nor were any amendments filed prior to the June 15th hearing, although a willingness to make the necessary amendments was belatedly expressed.

It was asserted at the hearing that the evidence would demonstrate the omissions were an unintentional error made by a preparer unfamiliar with the events. No such witness appeared, however, and the only witness testifying on this issue was quite familiar with the transactions at issue. As a matter of fact, the Court has no evidence that the omissions were either a mistake or an error.

Although good faith is required by 11 U.S.C. § 1129(a)(3) for the proposal of a plan of reorganization under Chapter 11, no explicit statutory provision exists which mandates good faith in the filing and maintenance of a case under Title 11. This Court has no doubt, however, that good faith, in the sense of honesty and forthrightness, is essential to a party's right to maintain a case. As a court of equity, the Court has full powers pursuant to 11 U.S.C. § 105 to sanction the lack of such honesty by any reasonable manner it chooses. The Court further believes that a demonstrated lack of good faith can be grounds for dismissal for cause under 11 U.S.C. § 1112(b). *See Merrill v. Allen (In re Universal Clearing House)*, 60 B.R. 985 (D.Utah 1986).

Where a hearing is held on a motion to dismiss for lack of good faith, the movant is required to make a *prima facie* showing of bad faith. *Universal Clearing*

*House*, 60 B.R. at 994. That showing was made in this case and was not satisfactorily refuted by the debtor.

Consistent with the foregoing, First Federal's motion to dismiss this case is sustained. Any determination of the applicability of any ruling in Adversary No. 2–89–0203 to First Federal's rights against Hartford, however, would be premature at this time. Such matter must be raised in that adversary proceeding if such determination is required.

IT IS SO ORDERED.