**In re Charles D. EASLEY, Debtor.**

·**Bankruptcy No. 95–03887–6J3.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 19, 1996.

Neil J. Buchalter, Titusville, FL, for Debtor.

Richard A. Palmer, Chapter 13 Trustee, Winter Park, FL.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION BY DEBTOR TO COMPLETE CHAPTER 13 PLAN*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case was heard on October 15, 1996, on the Motion of Charles D. Easley (the "Debtor") to Complete his Chapter 13 plan (the "Motion") (Doc. No. 29). Specifically, the Debtor seeks permission to pay all remaining amounts owed under his Chapter 13 plan using money borrowed from his parents. After reviewing the pleadings and considering the applicable law, the Motion is granted.

*Facts.* The Debtor filed his voluntary petition under Chapter 13 of the Bankruptcy Code on July 31, 1995. The order confirming his Chapter 13 Plan was entered on January 17, 1996. Under the Plan, the Debtor is required to make monthly payments of $805 for 60 months. Of the monthly amount, $677.67 goes to his secured creditors and $127.33 is distributed on a pro rata basis among the unsecured creditors. Unsecured

creditors will receive approximately 23% of the amount of their claims.

In the Motion, the Debtor asserts that he has remained current on his Chapter 13 payments but that he is still being harassed by one of his creditors, PNC Mortgage Securities ("PNC"). PNC holds the mortgage on the Debtor's home. The Debtor claims that PNC continues to assess late charges, interest and attorneys' fees and that the Debtor has spent an enormous amount of time and effort seeking to have these amounts waived.

Using money that the Debtor's parents have agreed to loan him, the Debtor hopes to pay the entire amount that creditors would receive pursuant to the Plan in one single lump sum payment. The Debtor claims that this would then allow him to begin paying his mortgage directly and eliminate his continuing problems with PNC. All unsecured creditors would receive the benefit of an early lump sum payment as opposed to small monthly payments spread over 60 months. The Trustee opposes the Debtor's request asserting that any monies the Debtor obtains, including the anticipated loan from his parents, should be used to increase payments under the Plan and not to simply "prepay" the Plan amounts.

*Issue.* Can the Debtor modify his Chapter 13 Plan to complete his payments owed under the Plan in one lump sum pursuant to Section 1329 of the Bankruptcy Code?

## SECTION 1329

The Debtor styled his Motion as one to "complete" plan payments. The proper terminology is that the Debtor seeks to modify his Plan to accelerate payments. Section 1329 of the Bankruptcy Code allows a debtor, trustee, or unsecured creditor to request modification of a plan at any time after confirmation of the plan but before completion of payments owed under the plan. 11 U.S.C. 1329 (1996). The modification may be requested in order to:

(1) increase or reduce the amount of payments under the plan,

(2) extend or reduce the time for such payments, or

(3) alter the amount of distribution to a creditor.

11 U.S.C. 1329 (1996).

The modified plan must conform to all of the statutory requirements of a Chapter 13 plan under Sections 1322, 1323, and 1325 of the Bankruptcy Code. David S. Cartee, *Surrendering Collateral Under Section 1329: Can the Debtor Have Her Cake and Eat It Too?,* 12 Bankr.Dev.J. 501, 513 (1995).

Although modification of a Chapter 13 plan often occurs when the debtor cannot make scheduled payments under the plan and seeks a reduction in the amount of the payments, modification also is appropriate when the debtor realizes an increase in income or assets. For example, when a Chapter 13 debtor suddenly and unexpectedly inherits money or property prior to the completion of the plan, the new assets become property of the estate pursuant to Sections 541 and 1306 of the Bankruptcy Code. *In re Euerle,* 70 B.R. 72, 73 (Bankr. D.N.H.1987). The debtor is obligated to advise the trustee of the event and to file a supplemental schedule listing this asset. *Id.* The new assets, whether they are an increase in income, an inheritance or lottery winnings, normally are used to increase the monthly payments until there is full payment to the unsecured creditors or until the new assets are exhausted. *Arnold v. Weast (In Re Arnold),* 869 F.2d 240 (4th Cir.1989); *In re Hart,* 151 B.R. 84, 86 (Bankr.N.D.Tex. 1993); *In re Euerle,* 70 B.R. 72; *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985).

Here, however, the Debtor has not experienced any sudden windfall or increase in assets. He has received nothing from his parents. Rather, he intends to borrow money from his parents to pay his existing creditors. He merely is substituting one set of creditors, his parents, for his former set of creditors addressed in the Plan. To the extent the loan proceeds from his parents became property of the estate, so would the corresponding liability.

The Trustee in essence argues that debtors are prohibited from borrowing funds from any third party, related or not, to prepay obligations under a confirmed Chapter

13 plan unless the borrowed funds are used to increase the debtor's Chapter 13 plan payments. By extension, the Trustee asserts that the loan proceeds should be used to continue or increase the Debtor's payments under the Chapter 13 Plan while, at the same time, impose new debts on the Debtor without any benefit. The Trustee's objection is not logical.

Although the unsecured creditors are only receiving approximately 23% of their claims under the Plan, they would receive the funds quicker and in a single payment and without risking future defaults by the Debtor. Moreover, they would receive a greater return if the Debtor prepaid the amounts rather than merely completed his payments under the Plan due to the increased time value of money. The creditors receive a substantial benefit under the Debtor's proposal to accelerate payments. Similarly, the Debtor receives a benefit of ridding himself of an ongoing, troublesome creditor. All sides benefit.

Accordingly, the Motion is granted. The Plan is modified. The time period in which the Debtor is required to make all remaining payments under the Plan is reduced to and including **January 31, 1997.** The Trustee's objection is overruled.

DONE AND ORDERED.