**In re Nina L. WILSON, Debtor.**

**Bankruptcy No. 2–91–05455.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

July 20, 1993.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

Robert H. Farber, Jr., Columbus, OH, for debtor.

### OPINION AND ORDER ON TRUSTEE'S MOTION TO MODIFY PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

#### I. *Preliminary Matters*

This matter is a core proceeding which is before the Court on a motion by the Chap-

ter 13 trustee ("Trustee") seeking to modify a confirmed plan. See 28 U.S.C. §§ 157(b)(2)(A), (L) & (O).

The debtor, Nina Wilson, has a Chapter 13 plan which was confirmed by the Court on September 16, 1991. In March, 1993, the Trustee learned that one of the major debts under the plan had been paid by the debtor's non-filing spouse from whom she was separated. The Trustee moved to modify the plan to increase the 10% dividend to unsecured claimants to an 83% dividend, payable in 36 months. The issue before the Court is whether the Trustee may force the debtor to raise the dividend in this confirmed plan because a large obligation under the plan has been paid by a third party.

For reasons set forth below, the Court finds that the increase in the debtor's disposable income was not unanticipated and the Trustee's motion to modify, therefore, will be denied under principles of *res judicata* or claim preclusion. Alternatively, should *res judicata* not bar the modification, the Court finds that the resulting change in the debtor's disposable income is not so substantial that a change in the plan should be ordered.

## II.  *Arguments of the Parties*

The Trustee argues that the debtor has received unanticipated windfall income through the payment of a large obligation. Under *In re Fitak*, 92 B.R. 243 (Bankr. S.D.Ohio 1988), *aff'd* 121 B.R. 224 (S.D.Ohio 1990), the Trustee asserts that the Court should order a modification of the plan to increase the dividend.

The debtor, on the other hand, contends the facts in this case are completely different from those in *Fitak* and points to the

fact that she now receives $300.00 less income per month as a result of reduced child support.

## III.  *Standards for Post–Confirmation Modification.*

Post-confirmation modification of a debtor's Chapter 13 plan is governed by 11 U.S.C. § 1329. That section, in turn, is subject to the provisions of § 1322(a) and (b), § 1323(c) and § 1325(a). See *In re Perkins*, 111 B.R. 671 (Bankr.M.D.Tenn. 1990). The best interests or liquidation equivalence test of § 1325(a)(4) applies to a proposed modification under § 1329(b). *In re Haas*, 76 B.R. 114 (Bankr.S.D.Ohio 1987). However, facially, § 1329 does not incorporate the disposable interest test set forth in § 1329(b). See *In re Moss*, 1 B.R. 563 (Bankr.C.D.Cal.1988) [1].

■ Although § 1329 of the Bankruptcy Code does not establish a standard for modification, courts have held that an allowed unsecured claimholder or trustee must show unanticipated and substantial change in a debtor's circumstances to obtain modification over the opposition of the debtor.[2]

### A.  *Unanticipated Change*

■ Principles of claim preclusion or *res judicata* bar a trustee from raising as grounds for modification facts that were known and could have been raised prior to confirmation of the debtor's proposed plan. Whether a change is "unanticipated" is determined objectively; the test is whether the change could have been reasonably anticipated at the time of confirmation.[3]

Courts have found unanticipated changes where the debtor has an unforeseeable dramatic increase in income or a windfall some

1.  But see 3 *Norton Bankruptcy Law and Practice* 77.02 (failure to include § 1325(b) among the requirements of § 1329 is probably a "legislative oversight") and 5 *Collier on Bankruptcy* ¶ 1329–01 (15th ed. 1991) ("this amendment [allowing the trustee to seek modification] is intended to carry the ability-to-pay standard forward to any modifications of the plan, allowing upward or downward adjustment of plan payments in response to changes in the debtor's circumstances which substantially affect the ability to make future payments") (citing *Oversight Hearings on*

*Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st and 2nd Sess. 215, 221 (1981–82).

2.  See *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa. 1988) and *In re Fitak*, 92 B.R. 243 (Bankr. S.D.Ohio 1988).

3.  See *In re Fitak*, 92 B.R. 243 and *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989).

time after confirmation. In *In re Fitak*, the court ordered an increase in the dividend where the debtor withdrew $16,000 from her state pension plan after her Chapter 13 plan was confirmed. The *Fitak* court was heavily influenced by the fact that these pension rights were vested when the case was filed and resignation from the job was clearly unanticipated. Further, if the case had been converted to one under Chapter 7, the pension monies would have been available for distribution to unsecured creditors.

Another case which sustained a request to increase the dividend and found the principles of *res judicata* inapplicable involved the nondisclosure of an anticipated inheritance of $300,000. *In re Euerle*, 70 B.R. 72 (Bankr.D.N.H.1987). The nondisclosure caused *res judicata* principles not to apply.

▮ The Court believes that where a debtor is separated or involved in divorce proceedings at the time of a creditor's meeting or confirmation hearing, the fact that the non-filing spouse might be ordered by a Domestic Relations Court to pay a joint debt is not unanticipated under objective standards. Parties should anticipate such a result and should require such contingencies to be provided for in the plan. Absent such provisions, confirmation acts as *res judicata* on the issue of the debtor's disposable income as such income may increase from a Domestic Relations Court's order to a non-debtor. If the divorce or separation is unanticipated, however, *res judicata* probably would not bar an otherwise appropriate modification.

### B. *Substantial Change in Circumstances*

▮ Even if *res judicata* were not a bar, a modest increase in a debtor's income of $267 per month [4] for 20 months [5] is not a change which is so substantial that a trustee's motion for modification should be

granted over the debtor's opposition. This single or separated parent with earned, take-home income of $1557 per month, plus modest child support, is not the type of debtor for which any legislation designed to curb abuses was designed. Given the uncertainty about the application of the disposable income test to a post-confirmation modification on the motion of a creditor or the trustee, such modifications should be limited to egregious situations designed to protect the Chapter 13 remedy from misuse or abuse.

Such egregious circumstances can be seen in reported cases such as *In re Arnold*, 869 F.2d 240 (4th Cir.1989) and *In re Koonce*, 54 B.R. 643 (Bankr.D.S.C.1985). The debtor in *Arnold* experienced an unexpected increase in annual income from $80,000 to $200,000. 869 F.2d at 241. Similarly, in *Koonce*, the debtor won a $1,300,000 lottery. 54 B.R. at 644.

Such facts almost "shock the conscience" and exemplify situations of a different order of magnitude from the facts presented in this case. This debtor has been relieved of a $567 monthly obligation and has had a $300 monthly decrease in income. Therefore, the net result is an increase of $267 each month of the plan after the 16th month. During the first 16 months of her plan, she paid the monthly mortgage through the Trustee.

Absent bad faith, concealment, specific superdischarge advantages, or other egregious facts, this Court finds that the provisions of Chapter 13 should not be interpreted in a manner which punishes a debtor who chooses to pay more to unsecured claimants than such parties would receive in a Chapter 7 case.[6] Such an interpretation would undercut the philosophy of Chapter 13 and encourage the filing of a Chapter 7 case. Where there is no evidence of bad faith or even of the use of the Chapter 13 superdischarge, the Court cannot understand why the debtor should be

---

**4.** This amount is calculated from the $567 payment freed up by the former spouse's payment minus the $300 decrease in child support.

**5.** There was no increase until month 16 and disposable income is only an issue through month 36.

**6.** The small amount of non-exempt assets in this debtor's estate would barely cover administrative expenses in a Chapter 7 case.

penalized for filing a Chapter 13 instead of a Chapter 7. Elevating a modest improvement in financial condition to the status of a substantial change in circumstances would be such a penalty. This is especially true where the "windfall" alleged is simply a decrease in liabilities because of a co-obligor's payment of a joint debt. There is no new asset here which could be claimed by unsecured creditors if this case converted to Chapter 7 nor has there been any event which could not have been foreseen at the time the plan was confirmed. There certainly is a strong incentive to complete the Chapter 13 plan because recourse to a new Chapter 7 case is enormously impacted by the new equity in the debtor's home.

### C. *Conclusion*

Based upon the foregoing, the Court finds that principles of *res judicata* prevent the modification sought by the trustee. The Court further finds that even if *res judicata* does not prevent the modification, the debtor has not experienced a substantial change in circumstances or windfall sufficient to persuade the Court to order an increase in the dividend provided for in the confirmed plan. Therefore, the trustee's motion should be, and the same is, hereby **DENIED.**

IT IS SO ORDERED.